WESTERN UNION TELEGRAPH CO. *v.* WESTERN AND ATLANTIC RAILROAD.

INJUNCTION. *Jurisdiction of chancery court.* A court of equity will take jurisdiction to enforce a contract respecting lands, notwithstanding the lands lie beyond its jurisdiction, when it has jurisdiction of the parties, and can act *in personam* in the enforcement of its decrees. But it is a sound qualification of the rule, that equity will not take jurisdiction when full and complete relief cannot be granted and enforced, except by the exercise of authority over property which lies within another State. In other words, it will not make a decree that it cannot enforce by its own authority, and which would be mere words, having no sanction by way of making them effective.

FROM HAMILTON.

Appeal from the Chancery Court. D. M. KEY, Chancellor.

Telegraph Co. *v.* Railroad.

KEY & RICHMOND for complainant.

VANDYKE, COOKE & VANDYKE for defendant.

FREEMAN, J., delivered the opinion of the court.

This bill is filed to restrain, by injunction, the Western and Atlantic Railroad Company, and their agents, S. C. Dodge and G. C. Connor, from connecting any wire or wires with the line or lines of wire belonging to complainant, running from the city of Chattanooga, in Tennessee, to Atlanta, Georgia, or from using the same in any way for the transmission of messages by the same, or from molesting or interfering with the free enjoyment of the same by complainant. This is the prayer of the bill.

The contest between the parties grows out of the following state of facts substantially:

In August, 1870, a contract was entered into between the Western and Atlantic Railroad, by Foster Blodget, who seems to have been superintendent of the railroad, which contract was approved by Rufus Bullock, then Governor of Georgia, by which certain mutual advantages, deemed of importance or convenience to both parties, were stipulated for. The purpose of the contract is thus generally stated in its commencement: "That in order to provide necessary telegraph facilities for the party of the second part, to wit, the railroad, and to a better understanding of the terms on which the party of the first part, the telegraph company, shall occupy the line of railroad with the line or lines of telegraph wires belonging to the

party of the first part, and to permanently settle and define the business relations between the respective parties hereto, it is mutually contracted and agreed, in consideration of the respective obligations herein assumed, as follows, to wit:

"The party of the first part agrees: 1st. To set apart on its line of poles along said railroad, a telegraph wire for the use of said party of the second part. 2d. To equip said line of wire with as many instruments, batteries, and other necessary fixtures as said party of the second part may require for use in its railroad stations, and to put the same in complete working order. 3d. To run said wire into all the offices of said party of the first part along the line of said railroad. 4th. To have said wire set apart for the exclusive use of said railroad company in the transmission of messages on the business of said railroad on and along the line thereof, etc." Then follows several other minor stipulations regulating the business between the parties, which need not be here cited.

It is then stipulated in substance, that the telegraph company shall have perpetual right of way to erect and maintain telegraph lines along said railroad, with stipulations tending to make this right exclusive in favor of complainant. It is then added, "and should a competing line of telegraph be established along said railroad, then the party of the first part shall be released from its stipulations to transmit messages free of charge. There are then various stipulations in favor of telegraph company, binding the rail-

road to transport, free of charge, poles and other material not necessary to be stated, as well as employes.

By the sixth clause of these stipulations, the railroad binds itself to pay the costs of constructing the wire designated, and set apart for its use, and equipping the same at the railroad stations, not altogether supplied with instruments, batteries, etc, as soon as the costs may be ascertained.

In December, 1870, the Western and Atlantic Railroad Company, a corporation different from the Western and Atlantic Railroad, with whom the above contract was made through Foster Blodget, superintendent, located the line of railway running from Atlanta to Chattanooga, and took control and management of the same, obtaining said lease from the State of Georgia. These lessees are charged to have violated the above contract, by failing to pay the telegraph company for messages according to the contract.

It further alledged that the president of this last company, the defendants in this case, in February, 1872, directed that none of the officers or agents of the complainant should be allowed to occupy any of the buildings or depots of the railroad company, and that the telegraph agents of the railroad company should do the entire business necessary for the accommodation of the public to the exclusion of the complainant, and receive the money for such messages for the use of the railroad company, using the said wire set apart under the contract cited above for this purpose. Further violations of the stipulations of said contract are

charged, showing a total repudiation of the same by the lessees. The main allegation, however, and the one that presents the real question between the parties most distinctly is, that the railroad company are claiming the right to use the wire, (that is, the one set apart under the above recited contract,) and to tap it at Chattanooga and other places along the line of the road, and thus use it in violation of the rights of the telegraph company. It is insisted that this violation of the contract on the part of the railroad company, releases the telegragh company from the obligation to allow the use of wire and instruments referred to.

On the part of respondent it is claimed, first, that the account for wire, fixtures and equipments of the telegraph had been presented to the State of Georgia by complainant, and had been paid, and that since the lease of the road to defendants, and that the State of Georgia owned the wire and equipments, and as such had transferred them to the lessees, who claimed them freed from the contract, which is not recognized as binding on said lessees.

The whole case, we think, turns on the true construction of this contract, for if the telegraph wire and equipments provided for in the contract was purchased and owned by the State of Georgia, without incumbrance on it, as a telegraph line of communication, then defendant, as assignee, stands in the shoes of the State, and would have all her rights; but as assignee, we take it, the lessee could not claim a higher position than his lessor, nor would such lessee be able to hold the property conveyed freed from any

incubrance fixed upon it while in the hands of the lessor.

The first stipulation of the contract is, that the telegraph company agrees to set apart on its line of poles along said railroad, a wire for the use of the railroad. Then follows stipulations for equipping the same with batteries, etc. After these are found the mutual benefits and advantages respectively stipulated for by each party, and obligations intended to be imposed. In the sixth clause herein before cited, it is simply provided, that the railroad compay binds itself to pay the costs of constructing the wire designated and set apart for its use, and equipping the same.

We think it clear from the whole contract that the telegraph company is the owner of the wire, batteries, and equipments, but sets them apart for the use of the railroad, on the terms indicated in the contract, one of which was payment of costs. Other corresponding advantages, or at least stipulations, being found in the contract, deemed satisfactory to the parties concerned. The terms used, "set apart to the use," etc., are not the appropriate words to convey title, nor does the general tenor of the instrument admit of that construction. If the title was to be in the State of Georgia, it would have been easy to say so. The railroad company, we hold, can only have the use of this wire, with its equipments, on the terms stipulated for in the contract. It cannot claim the use, under the contract, without adhering to the stipulations in favor of complainant, and which are claimed to be beneficial and profitable. The fact that

the State has paid the account rendered by complainant for costs of this wire, can be of no avail to respondent. It is only an adoption and ratification of the contract by the State, (if it needed any such ratification) and was in pursuance of the contract. It could not vest the title in the wire and equipments contrary to the terms of the contract, which we hold do not admit of this construction.

Respondent in this view of the contract cannot claim the use of this wire or equipments, and at the same time repudiate the stipulations in favor of complainant, which make up the consideration on which said wire was set apart for the use of the railroad. This would be to take the advantages of a contract so far as it was favorable, and repudiate it so far as it was of advantage to the other side. If respondents use the wire, it must be in pursuance of the terms of the contract, for complainants are in no wise bound to keep it set apart for their use on any other terms.

The Chancellor granted the injunction, in his decree, so far as the company or its agents were within the State of Tennessee, but refused it as to that part in the State of Georgia. In this we think he was correct.

While it has been well settled ever since the leading case of *Penn* v. *Lord Baltimore,* 1 Vesey, 444, that a court of equity will take jurisdiction to enforce a contract respecting lands, even, notwithstanding the lands lie beyond its jurisdiction, when it has jurisdiction of the parties, and can act *in personam* in the

enforcement of its decrees. See *Penn* v. *Lord Baltimore,* 3 Vol. & C. in Eq. and notes, 477 *et seq.*

Yet we think it an equally sound qualification of the rule, that equity will not take jurisdiction when full and complete relief cannot be granted and enforced, except by the exercise of authority over property which lies within another State. See 3 Lead. Cases in Eq., 497, 498. In other words, it will not make a decree that it cannot enforce by its own authority, and which would be mere words, having no sanction by way of making them effective. It is evident in this case that a decree against the officers and agents of the corporation in the State of Georgia might be disregarded every day, and a court of chancery in Tennessee would be powerless to punish for the contempt of its authority. It will not therefore make such a decree.

We therefore hold the Chancellor's decree correct, and affirm the same with costs.